THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS APICELLO, Appellant.

Argued May 24, 1937; decided July 13, 1937.

*Harry G. Anderson, Benjamin Schifter* and *Samuel G. Coler* for appellant. The assistant district attorney conducting the prosecution had in court, in his possession, a signed dying declaration which was substantially at variance with the People's testimony respecting such declaration. He concealed this fact from the court and jury and refused to produce the written declaration upon the demand of the defendant's counsel. This was reversible error. (*People* v. *Wilcox*, 245 N. Y. 404; *People* v. *Walsh*, 262 N. Y. 140; *People* v. *Miller*, 257 N. Y. 54; *People* v. *Falletto*, 202 N. Y. 494; *People* v. *Kane*, 213 N. Y. 260; *Shepard* v. *United States*, 290 U. S. 96; *Sprinkle* v. *State*, 137 Miss. 731.) Where the declaration has been reduced to writing, read over and approved by the declarant, the document becomes primary evidence of the declaration. Hence, a copy of said writing will not be received as evidence and parol proof of it will not be received until the written document has first been accounted for. The rule that the best evidence the case

admits of, within the power of the party, must be produced, applies in such case. (1 Wharton's Criminal Evidence [11th ed.], 908; *Rex* v. *Reason,* 1 Strange, 499; *Dunn* v. *People,* 172 Ill. 582; *People* v. *Glenn,* 10 Cal. 32; *Binns* v. *State,* 46 Ind. 311; *Evans* v. *Comm.,* 161 Va. 992; *Couch* v. *State,* 93 Tex. Crim. Rep. 27; *State* v. *Abrams,* 115 Kan. 520; *Turner* v. *State,* 89 Tenn. 547; *People* v. *Corey,* 157 N. Y. 332.) It was reversible error for the trial court to charge the jury that the only questions to be construed with respect to the dying declaration was whether it was made and whether it was true. (*People* v. *Pignataro,* 263 N. Y. 229; *People* v. *Wood,* 2 Edm. Sel. Cases, 71; *People* v. *Hoffman,* 195 Cal. 205; *People* v. *Greenig,* 342 Ill. 254; *Comm.* v. *Brewer,* 164 Mass. 577; *Comm.* v. *Puntario,* 271 Penn. St. 501; *State* v. *Bovino,* 89 N. J. L. 586; *People* v. *Thomson,* 145 Cal. 717; *State* v. *Custer,* 336 Mo. 514.) It was reversible error for the trial court to refuse to charge the jury that it was the duty of the district attorney to call the detective and that it was also his duty to produce the written dying declaration. (*People* v. *Leonardo,* 199 N. Y. 432; *Comm.* v. *Greene,* 292 Penn. St. 579; *People* v. *Strewl,* 246 App. Div. 400; *People* v. *Buccola,* 239 App. Div. 356.) The verdict is against the weight of the evidence. (*People* v. *Van Zandt,* 224 N. Y. 354; *People* v. *Zackowitz,* 254 N. Y. 192; *People* v. *Caruso,* 246 N. Y. 437.)

*William F. X. Geoghan, District Attorney* (*Edward H. Levine* and *Henry J. Walsh* of counsel), for respondent. The appellant's guilt was proved beyond a reasonable doubt. The refusal of the prosecutor to disclose the contents of the deceased's written dying declaration constituted no error. (*People* v. *Kane,* 213 N. Y. 260; *People* v. *Falletto,* 202 N. Y. 494; *People* v. *Sarzano,* 212 N. Y. 231; *People* v. *Sprague,* 217 N. Y. 373.) It was not error for the court to refuse to charge the jury that unfavorable inferences attached to the People's

case. (*Perlman* v. *Shanck*, 192 App. Div. 179; *People* v. *Smith*, 113 App. Div. 396; *People* v. *McGovern*, 105 App. Div. 296.)

FINCH, J. This is an appeal by the defendant Louis Apicello from a conviction of murder in the first degree.

Albert Haglund and a friend named Kinsella were drinking beer in a saloon in Brooklyn at about midnight on December 20, 1936. Apicello, who had formerly been a bartender in the saloon, also was present. He engaged in a conversation with Haglund, which developed into a quarrel when Haglund remarked that Apicello had not been a very good bartender. Finally, Apicello said, " I am not going to argue with you because you will be the loser in the end." He then left the saloon, stating that he would be back in ten minutes.

Ten or fifteen minutes later the defendant approached Matthew Witkowski, a boy of sixteen, outside the saloon. He showed Witkowski a revolver and told him to enter the saloon and inform Haglund that he was waiting to " give him a bullet." The boy entered the saloon and conveyed his message to Haglund, who thereupon went out. In a few minutes revolver shots were heard, and, when several of those in the saloon rushed to the street, they found Haglund mortally wounded. Kinsella testified that when he reached the doorway of the saloon he saw the defendant running away. At the time Apicello was only five feet from where Haglund was lying in the street, and from twenty to twenty-five feet from Kinsella. He disappeared into the hallway of a neighboring house. The boy Witkowski also saw the defendant run into this house, in which both the defendant and the boy resided. In his dying declaration the deceased identified Apicello as the man who shot him.

The facts establish the guilt of the defendant beyond a reasonable doubt. The testimony concerning the events which occurred in the saloon is confirmed by several witnesses. The deceased himself identified the defendant

as the one who shot him, and he was recognized at the scene of the crime by the boy Witkowski, who had been acquainted with him for more than five years, and by Kinsella, who had been speaking to him in the saloon about fifteen minutes prior to the shooting. The testimony is more than ample to identify the defendant as the killer. An occasional minor discrepancy in the testimony of the witnesses does not detract from the trustworthiness of their accounts of the material facts.

It is urged, however, that errors were committed in connection with the admission of the dying declaration of the deceased. After the shooting, the deceased was taken to the hospital. His body became paralyzed from his chest to his feet. His condition did not improve, and three days before his death the deceased made a dying declaration in which, after stating that he thought he was going to die, that he had no hope of recovery and that the doctors had told him that he had no chance, he related the occurrences in the saloon and identified the defendant as the man who had shot him. The substance of this declaration was reduced to writing and signed by the deceased.

At the trial, after medical testimony showing that the deceased was in extremis at the time he made his dying declaration, a detective was called, and he testified as to the substance of the dying declaration. Upon cross-examination of this witness, Detective O'Brien, the following colloquy occured: " Q. Have you got the written statement? A. Written statement was taken by Detectice Cicone of the Homicide Squad. Q. May I look at the statement taken at the bedside? By Mr. Madden (Assistant District Attorney): No. By Mr. Coler: I ask Your Honor to direct that I see the statement taken at the bedside. Is Detective Cicone in the court room? (No answer.) Witness: I don't see him. By Mr. Coler: Q. Detective Cicone? (No answer.) Q. Were you present when that statement was taken? A. I was. Q. Then this statement was taken in your presence?

A. It was. Q. Have you got that statement? The Court: He said no. By Mr. Coler: He has got it. The Court: I said he didn't know. He told by whom it was taken."

Later counsel for defendant requested the court to charge that it was the duty of the District Attorney to produce the detective who had taken the written declaration. The court refused this charge on the ground that the District Attorney was under no obligation to produce the witness, and also refused to charge that if any witness or document within the control of the District Attorney was not produced, the jury might infer that such document or the testimony of such witness would be favorable to the defendant. It now appears that the Assistant District Attorney who prosecuted the case had the written declaration in his pocket throughout the trial.

There can be no doubt that the Assistant District Attorney acted improperly in failing to produce the written declaration which was in his pocket. The fact that he acted improperly, however, does not necessarily require a reversal on this appeal. The record shows that the Presiding Judge was not given an opportunity on a clear request to rule on the question whether the District Attorney was obliged to produce the written declaration. Upon an appeal from a conviction of murder in the first degree, however, we are not inclined to disregard what would otherwise be an error by construing the request for a ruling too narrowly. We shall consider, therefore, whether there was error in the admission of the testimony of the oral dying declaration, and whether such erro and the failure of the Assistant District Attorney to produce the written declaration requires a reversal.

There is no rule against the admission of oral testimony of dying declarations. (Cf. *People* v. *Kane*, 213 N. Y 260, 267.) It is true that a number of States have held that where a declaration has been reduced to writing and signed by the deceased, a copy of the declaration or parol proof will not be received until the written

declaration has been accounted for. This court has never passed on the question, and the rule generally applied has been sharply criticized by Wigmore, who points out that the best evidence rule has no application since the oral testimony is itself competent evidence of the oral dying declaration, whereas the written declaration subsequently signed is in substance a second dying declaration. (3 Wigmore on Evidence [2d ed.], § 1450.) Assuming, however, that the written declaration should have been accounted for, the error must be overlooked since it in no way prejudiced the defendant. A comparison of the written declaration, which has been submitted with the record on appeal, and the oral testimony of the dying declaration reveals that in the main, they are not substantially different. Where there may be a difference due to ambiguity of language, there is other evidence in the record sufficient to compel us to disregard the difference as not substantially affecting the result. Thus neither the admission of the oral evidence of the dying declaration nor the failure to produce the written declaration prejudiced the defendant.

Nor was there prejudicial error in the court's refusal to charge that an inference favorable to the defendant arose because of the failure of the District Attorney to call a witness or produce documents. The rule does not apply where the evidence or the witness is available equally to both parties and the testimony would be merely cumulative; and, in the case at bar, we know that the document contained nothing favorable to the defendant.

It is unnecessary to consider in detail other alleged errors since a reading of the charge as a whole shows that all the applicable rules of law were made clear to the jury.

The judgment of conviction should be affirmed.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Judgment of conviction affirmed.